**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TAMMY JO LONG, an Illinois Resident, and LUXURY PROPERTIES, LLC | ) ) ) | 17-CV-2756 |
| Plaintiffs, | ) ) | Hon. Jorge L. Alonso |
| v. | ) ) | |
| BANK OF AMERICA, N.A., | ) ) | |
| Defendant. | ) ) | |

**<u>BANK OF AMERICA, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD.......................................................................................... 3

    I.     APPLICABLE LEGAL STANDARD FOR DISMISSAL PURSUANT
          TO RULE 12(b)(6) ...................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.     THE COURT SHOULD DISMISS COUNT I (BREACH OF
          CONTRACT), COUNT II (DEFAMATION PER SE), AND COUNT III
          (DEFAMATION PER QUOD) FOR FAILURE TO STATE A CLAIM
          FOR WHICH RELIEF CAN BE GRANTED. ........................................ 4

          A.     Plaintiffs' Breach of Contract and Defamation Claims Are
               Preempted by the Bankruptcy Code. ................................................ 4

          B.     Even if They Were Not Preempted by the Bankruptcy Code,
               Plaintiffs' Defamation Claims Are Preempted by the FCRA. .................... 5

          C.     Even if It Was Not Preempted by the Bankruptcy Code, Plaintiffs'
               Breach of Contract Claim Based on Express Terms of the
               Settlement Agreement is Preempted by the FCRA................................... 7

          D.     Even if It Was Not Preempted by the Bankruptcy Code, to the
                Extent Plaintiffs' Breach of Contract Claim Is Based on Implied
               Terms of the Settlement Agreement or the Implied Covenant of
               Good Faith and Fair Dealing, Their Claim Is Preempted by the
               FCRA. ................................................................................ 9

          E.     Even if Not Preempted by the Bankruptcy Code and the FCRA,
                Plaintiffs' Breach of Contract Claim Still Fails Because Plaintiffs
               Cannot Identify a Provision in the Contract That Was Actually
               Breached by BANA. ............................................................... 11

          F.     Even if Not Preempted by the Bankruptcy Code and FCRA,
                Plaintiffs' Defamation Claims Based on Conduct Committed Prior
               to April 11, 2016 Are Time-Barred. ........................................... 13

    II.    THE COURT SHOULD DISMISS COUNT V (SANCTIONS FOR
          VIOLATION OF CONFIRMED PLANS) AND COUNT VI
          (SANCTIONS FOR VIOLATION OF BANKRUPTCY ORDER) FOR
          FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE
          GRANTED. ............................................................................. 14

AmericasActive:9233828.1

A.    Count VI Is Duplicative Of Count V. ........................................................ 14

B.    An Independent Cause of Action Is an Inappropriate Mechanism to Seek Contempt or Sanctions for the Violation of a Bankruptcy Court Order or Confirmed Plan. ................................................................ 15

C.    There Is No Private Right of Action for Sanctions Stemming from the Violation of a Confirmed Plan or Confirmation Order....................... 18

D.    Allegedly False Reporting to Credit Agencies Was Not a Violation of the Confirmation Order or Confirmed Plans. ....................................... 20

E.    Punitive Damages Cannot Be Considered For Alleged Civil Contempt. ................................................................................................. 24

III.    THE COURT SHOULD DISMISS COUNT IV (DECLARATORY JUDGMENT) FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED. ............................................................................ 26

CONCLUSION ......................................................................................................................... 27

AmericasActive:9233828.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ............................................................................23

*Amari v. Radio Spirits, Inc.*,
219 F. Supp. 2d 942 (N.D. Ill. 2002) ....................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................4, 12, 21, 22

*Bessette v. Avco Fin. Servs., Inc.*,
230 F.3d 439 (1st Cir. 2000) ..............................................................................5, 6

*Burke v. 401 N. Wabash Venture, LLC*,
No. 08 CV 5330, 2010 WL 2330334 ...........................................................12, 13, 14

*Campbell v. Chase Manhattan Bank, USA, N.A.*,
No. 02–3489, 2005 WL 1514221 (D.N.J. June 27, 2005) .......................................9

*Carruthers v. Am. Honda Fin. Corp.*,
717 F. Supp. 2d 1251 (N.D. Fla. 2010) .............................................................10, 11

*In re Castle Home Builders, Inc.*,
520 B.R. 98 (Bankr. N.D. Ill. 2014) ............................................................... *passim*

*Causay v. Wells Fargo Bank, N.A.*,
No. 16-CV-7398, 2016 WL 7188167 (N.D. Ill. Dec. 12, 2016)................7, 8, 9, 10

*In re Consol. Indus.*,
360 F.3d 712 (7th Cir. 2004) .............................................................................16, 17

*In re Costa*,
172 B.R. 954 (Bankr. E.D. Cal. 1994) ..................................................................19

*Cox v. Zale Delaware, Inc.*,
239 F.3d 910 (7th Cir. 2001) ..............................................................................20, 26

*Cox v. Zale Delaware, Inc.*,
No. 97 C 4464, 1998 WL 397841 (N.D. Ill. July 13, 1998) .......................................5

*D. Patrick, Inc. v. Ford Motor Co.*,
8 F.3d 455 (7th Cir. 1993) .................................................................................16, 17

iv

*In re Davis*,
No. 04-80068, 2009 WL 302221 (Bankr. C.D. Ill. Feb. 5, 2009)............................................20

*Day v. Chevron U.S.A. Inc.*,
No. 1:10-CV-01320-RLY, 2011 WL 4550160 (S.D. Ind. Sept. 29, 2011) ............................27

*In re Dendy*,
396 B.R. 171 (Bankr. D.S.C. 2008) ................................................................................ *passim*

*DiPrinzio v. MBNA Am. Bank, N.A.*,
2005 WL 2039175 (E.D. Pa. Aug. 24, 2005) ........................................................................23

*Ferrell v. Pierce*,
785 F.2d 1372 (7th Cir. 1986) ...............................................................................................21

*Fifth Third Bank, Indiana v. Edgar Cty. Bank & Trust*,
482 F.3d 904 (7th Cir. 2007) .................................................................................................16

*In re Goodfellow*,
298 B.R. 358 (Bankr. N.D. Iowa 2003) ............................................................................22, 23

*Granville Alley v. Farmers Bank, Inc.*,
No. 3:13-CV-146, 2014 WL 4287103 (M.D. Ga. Aug. 29, 2014) ...............................8, 10, 11

*Granville Alley v. Farmers Bank, Inc.*,
No. 3:13-CV-146 CAR, 2014 WL 4287103 (M.D. Ga. Aug. 29, 2014) ................................10

*Holloway v. Household Auto. Fin. Corp.*,
227 B.R. 501 (N.D. Ill. 1998) ..................................................................................................5

*Hukic v. Aurora Loan Servs., Inc.*,
No. 05 C 4950, 2007 WL 2563363 (N.D. Ill. Aug. 31, 2007), *aff'd sub nom.*
*Hukic v. Aurora Loan Servs.*, 588 F.3d 420 (7th Cir. 2009)........................................7, 8, 9, 10

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*,
57 F. Supp. 3d 902 (N.D. Ind. 2014), *aff'd sub nom. Hummel v. St. Joseph*
*Cty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016) ............................................................27

*In re Jones*,
No. 09-14499-BFK, 2011 WL 5025329 (Bankr. E.D. Va. Oct. 21, 2011)............................22

*In re Joubert*,
411 F.3d 452 (3d Cir. 2005)....................................................................................................20

*Kavicky v. Washington Mut. Bank, F.A.*,
No. 3:06CV01812(AWT), 2007 WL 1341345 (D. Conn. May 5, 2007) ..................................8

v

*In re Kimball Hill, Inc.,*
    565 B.R. 878 (Bankr. N.D. Ill. 2017) ...................................................................18

*In re Kmart Corp.,*
    No. 02 B 02474, 2006 WL 952042 (Bankr. N.D. Ill. Apr. 11, 2006)................................20, 21

*In re Knox,*
    237 B.R. 687 (Bankr. N.D. Ill. 1999) ...................................................................19

*Kurtz v. Toepper,*
    No. 11 C 4738, 2012 WL 33012 (N.D. Ill. Jan. 6, 2012) ......................................15

*Lansing v. Carroll,*
    868 F. Supp. 2d 753 (N.D. Ill. 2012) ...................................................................26

*Leet v. Cellco P'ship,*
    480 F. Supp. 2d 422 (D. Mass. 2007) ....................................................................8

*Lufkin v. Capital One Bank (USA), N.A.,*
    No. 3:10–cv–18, 2010 WL 2813437 (E.D. Tenn. July 16, 2010)............................9

*In re Mahoney,*
    368 B.R. 579 (Bankr. W.D. Tex. 2007).............................................................22, 23

*In re McGregor,*
    398 B.R. 561, 2008 WL 5225743 (Bankr. N.D. Miss. 2008) .................................20

*McWane, Inc. v. Crow Chicago Indus., Inc.,*
    224 F.3d 582 (7th Cir. 2000) ............................................................................11

*Michalowski v. Flagstar Bank, FSB,*
    No. 01 C 6095, 2002 WL 113905 (N.D. Ill. Jan. 25, 2002) ....................................1

*Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard,
P.C.,*
    385 F.3d 737 (7th Cir. 2004) ............................................................................15

*In re Mogg,*
    No. 05-34066, 2007 WL 2608501 (Bankr. S.D. Ill. Sept. 5, 2007) . Civil............16, 17, 22, 23

*MSR Exploration Ltd. v. Meridian Oil, Inc.,*
    74 F.3d 910 (9th Cir. 1996) ...............................................................................5

*Munson v. Countrywide Home Loans, Inc.,*
    No. 08-13244, 2008 WL 5381866 (E.D. Mich. Dec. 17, 2008) .........................9, 10

*Nat'l Tech., Inc. v. Repcentric Sols.,*
    No. 13 C 1819, 2013 WL 6671796 (N.D. Ill. Dec. 18, 2013) ..........................12, 14

AmericasActive:9233828.1

*Norman v. Applied Card Sys., Inc. (In re Norman)*,
   2006 WL 2818814 (Bankr. N.D. Ala. Sept. 29, 2006) .........................................................23

*Peal v. Lee*,
   403 Ill. App. 3d 197 (1st Dist. 2010) ...................................................................................14

*Pertuso v. Ford Motor Credit Co.*,
   233 F.3d 417 (6th Cir. 2000) ................................................................................................20

*Purcell v. Bank of Am.*,
   659 F.3d 622 (7th Cir. 2011) .........................................................................................6, 7, 9

*In re Ryan*,
   100 B.R. 411 (Bankr. N.D. Ill. 1989) ...................................................................................21

*In re Schatz*,
   122 B.R. 327 (N.D. Ill. 1990) .........................................................................................16, 17

*In re Shape, Inc.*,
   135 B.R. 707 (Bankr. D. Me. 1992) ........................................................................................5

*Spencer v. Nat'l City Mortg.*,
   831 F. Supp. 2d 1353 (N.D. Ga. 2011) ...................................................................................8

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ................................................................................................4

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*,
   61 Ill. 2d 129 (1975) .............................................................................................................14

*Town of Newton v. Rumery*,
   480 U.S. 386 (1987)...............................................................................................................13

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009)..........................................................18

*Trout v. BMW of N. Am.*,
   No. 2:04–cv–01466–BES–LRL, 2007 WL 602230 (D. Nev. Feb. 20, 2007) ..........................9

*Twomey v. Ocwen Loan Servicing, LLC*,
   No. 16-CV-0918, 2016 WL 4429895 (N.D. Ill. Aug. 22, 2016) .............................................5

*Van Der Molen v. Washington Mut. Fin., Inc.*,
   359 Ill. App. 3d 813 (1st Dist. 2005) ...................................................................................11

*Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*,
   221 B.R. 222 (Bankr. N.D. Ill.1998) ....................................................................................25

vii

*In re Vogt*,
  257 B.R. 65 (Bankr. D. Colo. 2000) ...............................................................................22, 23

*Vulcan Golf, LLC v. Google, Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ...................................................................................26

*Walls v. Wells Fargo Bank, N.A.*,
  276 F.3d 502 (9th Cir. 2002) ...............................................................................................21

*Willey v. J.P. Morgan Chase, N.A.*,
  No. 09–civ–1397, 2009 WL 1938987 (S.D.N.Y. July 7, 2009) ..............................................9

**Statutes**

11 U.S.C. § 105 ...............................................................................................................19, 20, 21

11 U.S.C. § 105(a) ............................................................................................................. *passim*

11 U.S.C. § 362(h) .................................................................................................................19, 20

11 U.S.C. § 506(b) .......................................................................................................................20

11 U.S.C. § 524 .....................................................................................................................21, 22, 25

11 U.S.C. § 524(a)(2) ...................................................................................................................20

11 U.S.C. § 524(c) ........................................................................................................................20

11 U.S.C. § 1141 ...........................................................................................................19, 20, 21

11 U.S.C. § 1141(a) ......................................................................................................................5, 6

11 U.S.C. § 1141(d)(5)(A) ...........................................................................................................25

15 U.S.C. § 1681s–2 ..................................................................................................................8, 10

15 U.S.C. § 1681t ...........................................................................................................................7

15 U.S.C. § 1681t(b)(1)(F) .................................................................................................6, 7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).............................................................................................. *passim*

Fed. R. Civ. P. 12(f) .....................................................................................................................15

Bank of America, N.A. ("BANA"), through its attorneys, Winston & Strawn LLP, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint ("Complaint" or "Compl.," Doc. 1) of Plaintiffs Tammy Jo Long ("Long") and Luxury Properties, LLC ("Luxury") (jointly, "Plaintiffs"), with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons stated herein, Plaintiffs' Complaint fails to state a complaint for which relief can be granted.

## INTRODUCTION

Plaintiffs' claims arise out of the servicing of a loan (the "Loan") encumbering a property located at 5456 Captains View, Tybee Island, GA 31328 ("Property" or "Captains View Property"), as well as circumstances involving consolidated chapter 11 bankruptcies, case numbers 11-19484 and 11-19428 (collectively, the "Bankruptcy Matter"), filed by Long and her then closely-held company Castle Home Builders, Inc. in 2011. The Bankruptcy Matter resulted in the confirmation of the proposed plans ("Confirmed Plans") for each respective debtor on June 27, 2013 ("Confirmation Order"). On June 6, 2013, BANA voted for acceptance of the debtors' plan for reorganization. Doc. 1-2 at 72. On January 31, 2014, due to the alleged failure on the part of several creditors, including allegedly BANA, to comply with the terms of the Confirmed Plans, Plaintiffs filed a Motion to Enforce Confirmation Order and for the Imposition of Sanctions for the Intentional Disregard of Confirmed Plans of Reorganization ("Motion to Enforce"). Doc. 1-2 at 74. On July 18, 2014, Plaintiffs and BANA entered into a settlement agreement ("Settlement Agreement") to resolve the dispute with respect to the Confirmed Plans. The Settlement Agreement is attached hereto as **Exhibit A**, under seal.[1]

---

[1] The Court may consider any document without converting the instant motion to one for summary judgment if the document is "referred to in the complaint and is central to the plaintiff's claims." *Michalowski v. Flagstar Bank, FSB*, No. 01 C 6095, 2002 WL 113905, at *2 (N.D. Ill. Jan. 25, 2002) (*citing Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).

The entire basis of the Complaint involves alleged conduct by BANA that began in 2016. Specifically, Plaintiffs allege that beginning in 2016, BANA falsely reported on the Loan that: (i) Long has filed a new bankruptcy, (ii) that Long is the borrower under the Captain's View Loan, (iii) that the Loan was delinquent, (iv) that foreclosure proceedings have been initiated, and (v) that Loan payments have been missed. Doc. 1 ¶¶ 37-40, 63. After learning of the alleged false reporting, Plaintiffs' counsel contacted BANA's bankruptcy counsel, and BANA directly, to determine whether or not the alleged credit reporting could be resolved. Doc. 1-2 at 91-96. Plaintiffs eventually received a response from BANA requesting a signed authorization form to allow BANA to release confidential information to Plaintiffs' counsel (Doc. 1-2 at 98), which was returned to BANA on March 22, 2017 (Doc. 1 ¶¶ 37-40), but Plaintiffs filed this suit less than three weeks later. Plaintiffs do not allege to have attempted to dispute the reporting with the credit agencies pursuant to the process outlined by the Fair Credit Reporting Act ("FCRA"). Plaintiffs claim that the alleged false reporting resulted in a breach of the Settlement Agreement, defamation *per se*, and defamation *per quod*, and entitles them to declaratory judgment and sanctions for violation of the Confirmed Plans and the Confirmation Order.

Each of Plaintiffs' claims fails for numerous reasons. Plaintiffs' state law claims are preempted by the Bankruptcy Code, the FCRA, or both. Even if their claims were not preempted, Plaintiffs fail to identify a provision in the Settlement Agreement that was actually breached as a result of the alleged false reporting identified in the Complaint. Furthermore, to the extent Plaintiffs' defamation claims are based on credit reporting occurring prior to April 11, 2016, their claims are time-barred. In addition, Plaintiffs' claims for sanctions under the Bankruptcy Code are duplicative and subject to dismissal accordingly, and are improper vehicles for seeking contempt, sanctions, and enforcement of bankruptcy court ("Bankruptcy Court") orders.

AmericasActive:9233828.1

Moreover, there is no private right of action for such claims. Even if Plaintiffs could bring a private action seeking sanctions for violation of the Confirmed Plans and Confirmation Order, Plaintiffs' claims would still fail in light of the fact that the alleged false credit reporting, on its own, is insufficient to be considered a violation of the Confirmed Plans and Confirmation Order. Finally, Plaintiffs' claim for declaratory judgment cannot stand in light of Plaintiffs' failure to plead a cognizable underlying claim, as well as for the other reasons described herein. For all of these reasons, Plaintiffs' Complaint should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

## **LEGAL STANDARD**

### I.    **APPLICABLE LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(B)(6)**

To survive a Rule 12(b)(6) motion: "(1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests; and (2) its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim "***must contain sufficient factual matter … to state a claim for relief that is plausible on its face***." *Id.* (emphasis added). In requiring plausibility of a claim for relief, a plaintiff is not held to a "probability requirement," but the plaintiff must still plead more than a "sheer possibility that a defendant acted

AmericasActive:9233828.1

unlawfully." *Id.* A complaint that only pleads facts that are "merely consistent with" liability fails to cross the line from "possibility" to "plausibility." *Id.*

## ARGUMENT

**I.** **THE COURT SHOULD DISMISS COUNT I (BREACH OF CONTRACT), COUNT II (DEFAMATION *PER SE*), AND COUNT III (DEFAMATION *PER QUOD*) FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.**

### A. Plaintiffs' Breach of Contract and Defamation Claims Are Preempted by the Bankruptcy Code.

In their Complaint, Plaintiffs bring state law claims, as well as claims seeking sanctions under the Bankruptcy Code. *See generally* Doc. 1. Therefore, Plaintiffs, pursuant to their claims in Counts V and VI, assert that the alleged false reporting to credit agencies by BANA is governed by the Bankruptcy Code. Courts in this district have held that the Bankruptcy Code preempts state law claims. *Twomey v. Ocwen Loan Servicing, LLC*, No. 16-CV-0918, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016).

The expansive reach of the Bankruptcy Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts. *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 507 (N.D. Ill. 1998); *Cox v. Zale Delaware, Inc.*, No. 97 C 4464, 1998 WL 397841, at *5 (N.D. Ill. July 13, 1998). For instance, the *Twomey* court, in dismissing a post-discharge state consumer fraud claim as preempted by the Bankruptcy Code, cited to numerous courts that have held that "because the Bankruptcy Code provides a remedial scheme for addressing violations of the Bankruptcy Code, it preempts state law claims based upon such violations." *Twomey*, 2016 WL 4429895, at *2 (quoting *Diamante v. Solomon & Solomon*, *P.C.*, No. 1:99CV1339(FJS/DRH), 2001 WL 1217226, at *2 (N.D.N.Y. Sept. 18, 2001)). The *Diamente* court reasoned that allowing a plaintiff to circumvent the Code's enforcement and remedial scheme would frustrate Congress's intent "to create a singular federal system to adjust all of the rights and duties of both creditors and

debtors." *Id.*; *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) ("[T]he broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code."); *MSR Exploration Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996) (Congress intended the Bankruptcy Code to "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."); *In re Shape, Inc.*, 135 B.R. 707, 708 (Bankr. D. Me. 1992) ("Since [the Bankruptcy Code] is applicable here, and has its own enforcement scheme and separate adjudicative framework, it must supercede any state law remedies.").

Counts V and VI of the Plaintiffs' Complaint each seek sanctions for violation of the Confirmed Plans pursuant to 11 U.S.C. § 1141(a). Doc. 1 ¶¶ 86-103. The violation at issue is the alleged false credit reporting by BANA. Doc. 1 ¶¶ 35-40, 63, 71. The alleged false credit reporting is also the basis for the breach of contract claim and defamation claims in Counts I-III. Given that Plaintiffs allege that the alleged false credit reporting was done in violation of § 1141(a) of the Bankruptcy Code, they cannot simultaneously allege state law claims for the exact conduct, since the Bankruptcy Code preempts "virtually all alternative mechanisms for remedying violations of the code." *Bessette*, 230 F.3d at 447. Accordingly, Plaintiffs' Counts I-III should be dismissed for failure to state a claim for which relief can be granted.

### B. Even if They Were Not Preempted by the Bankruptcy Code, Plaintiffs' Defamation Claims Are Preempted by the FCRA.

In Counts II and III, Plaintiffs bring claims for defamation *per se* and defamation *per quod*, each based on the alleged false credit reporting by BANA. Doc. 1 ¶¶ 63, 71. However, Plaintiffs cannot maintain claims for any kind of defamation based on false credit reporting because such claims are preempted by the FCRA.

The Seventh Circuit's holding in *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011) is instructive and controlling.  In *Purcell*, the debtor brought an action against BANA for violation of the FCRA, and asserted various common law claims, including defamation, invasion of privacy, and negligence.  *Id.*  The Seventh Circuit held that § 1681t(b)(1)(F) of the FCRA preempted each of the state law claims for defamation, invasion of privacy, and negligence in reporting of information to consumer reporting agencies, including any claims for willfully false credit reports. *Id.* at 625-26 ("[T]he first-enacted statute [§ 1681h(e)] preempts some state regulation of reports to credit agencies, and the second-enacted statute [§ 1681t(b)(1)(F)] preempts more.").  Section 1681t(b)(1)(F) of the FCRA states as follows:

> No requirement or prohibition may be imposed under the laws of any State—
>
> **(1)** with respect to any subject matter regulated under—
>
>> **(F)** section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—
>>
>>> **(i)** with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
>>>
>>> **(ii)** with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996) . . . .

15 U.S.C. § 1681t.  Section 1681s-2 governs the responsibilities of furnishers of information to consumer reporting agencies.  Thus, the Seventh Circuit in *Purcell* proceeded to instruct the district court to dismiss each of the debtor's claims with prejudice.  *Id.*  Courts in the Northern District of Illinois continue to enforce the Seventh Circuit's holding in *Purcell*.  *See Causay v. Wells Fargo Bank, N.A.*, No. 16-CV-7398, 2016 WL 7188167, at *4 (N.D. Ill. Dec. 12, 2016) (dismissing

6

defamation claim as preempted and stating, "[*Purcell*] held that § 1681t(b)(1)(F) reduces the scope of permissible state regulation to preempt even willfully false reports that fall under its purview").

Here, there is no dispute that Plaintiffs' defamation claims are entirely based on the alleged false credit reporting on the part of BANA, Doc. 1 ¶¶ 35-40, 63, 71, as there is no other wrongful conduct alleged to have been done by BANA. Since the FCRA preempts each of the defamation claims based on the reporting of information to consumer reporting agencies, Plaintiffs claims for defamation in Counts II and III fail to state a claim for which relief can be granted. Accordingly, each of the claims should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

C.    **Even if It Was Not Preempted by the Bankruptcy Code, Plaintiffs' Breach of Contract Claim Based on Express Terms of the Settlement Agreement is Preempted by the FCRA.**

The issue of whether a breach of express terms in a contract can be preempted by the FCRA has not been decided by the Seventh Circuit. Within the Seventh Circuit, it appears only two district courts may have addressed this issue. In *Hukic v. Aurora Loan Servs., Inc.*, No. 05 C 4950, 2007 WL 2563363, at *12 (N.D. Ill. Aug. 31, 2007), *aff'd sub nom. Hukic v. Aurora Loan Servs.*, 588 F.3d 420 (7th Cir. 2009), the Court held that conduct under the breach of contract action relating to furnishing information to credit agencies is preempted by the FCRA. *Hukic* was subsequently affirmed by the Seventh Circuit, but the issue of preemption was not addressed on appeal. More recently, in *Causay*, the court held that because the legal duty giving rise to a plaintiff's breach of express contract claim is not imposed by state law, the claim is not preempted by § 1681t(b)(1)(F). *Causay*, 2016 WL 7188167, at *5. In *Causay*, the court referenced several other district courts nationally that have held express contract claims are not preempted by the FCRA.[2] *Id.*

---

[2] *See Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146, 2014 WL 4287103, at *7 (M.D. Ga. Aug. 29, 2014) (finding preemption for breach of an implied agreement but specifically noting that "it is clear that a breach of contract

7

On the other hand, some courts have recognized that the view expressed in *Causay* is not universal, and pointed to the fact that some district courts have concluded that *any* state-law claim relating to conduct regulated by § 1681s–2 is preempted, even if that conduct also violated the terms of an express agreement between the parties. *Spencer v. Nat'l City Mortg.*, 831 F. Supp. 2d 1353, 1364 (N.D. Ga. 2011). For instance, numerous courts have held that when a breach of contract allegation is founded solely on a bank's actions in reporting a debtor's payment history, such reporting is the subject matter regulated by § 1681s–2 of the FCRA, thereby preempting any such breach of contract claim. *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866, at *5 (E.D. Mich. Dec. 17, 2008).[3]

BANA posits that this Court should follow the interpretation that when a breach of contract allegation is based solely on the furnishing of information to credit agencies, then the claim should be preempted by the FCRA. The court in *Causay* attempts to draw a confusing distinction between a "duty imposed by state law" and a "remedy provided by state law," coming to the conclusion that "breach of contract" is a remedy provided for under state law, but the duty is undertaken by the parties themselves. *Causay*, 2016 WL 7188167, at *4-5. However, § 1681t(b)(1)(F) does not mention the word "duty" and draws no distinction between a duty and a remedy. This is a

_____

claim based on an express agreement between the parties does not arise from a 'requirement or prohibition ... imposed under laws of any State' and therefore falls outside preemption imposed by § 1681t(b)(1)(F)"); *Spencer v. Nat'l City Mortg.,* 831 F. Supp. 2d 1353, 1364 (N.D. Ga. 2011) (holding that to the extent plaintiff's breach of contract claim was based upon breach of an express agreement, the claim was not preempted by the FCRA); *Leet v. Cellco P'ship*, 480 F. Supp. 2d 422, 431-32 (D. Mass. 2007) (holding that breach of an alleged contractual obligation to remove negative information from plaintiff's credit report was not imposed by state law and therefore not preempted by the FCRA); *Kavicky v. Washington Mut. Bank, F.A.*, No. 3:06CV01812(AWT), 2007 WL 1341345, at * 2 (D. Conn. May 5, 2007) ("[T]he FCRA does not preempt breach of contract claims.").

[3] *See, e.g., Hukic,* 2007 WL 2563363, at *12; *Lufkin v. Capital One Bank (USA), N.A.,* No. 3:10–cv–18, 2010 WL 2813437, at *4 (E.D. Tenn. July 16, 2010); *Willey v. J.P. Morgan Chase, N.A.,* No. 09–civ–1397, 2009 WL 1938987, at *9 (S.D.N.Y. July 7, 2009); *Trout v. BMW of N. Am.,* No. 2:04–cv–01466–BES–LRL, 2007 WL 602230, at *3 (D. Nev. Feb. 20, 2007); *Campbell v. Chase Manhattan Bank, USA, N.A.,* No. 02–3489, 2005 WL 1514221, at *17 (D.N.J. June 27, 2005).

AmericasActive:9233828.1

distinction that the *Causay* court drew itself when it determined that the term "requirement or prohibition" equates to "legal duty giving rise to the claim." *Causay*, 2016 WL 7188167, at *4.

In reality, any "requirement or prohibition" related to the furnishing of information to credit bureaus within the Settlement Agreement—although none actually exists in the Settlement Agreement—would have been created under the laws governing the state of Illinois when the Settlement Agreement was formed. In order to enforce a breach of contract claim, Plaintiffs are required to rely on *Illinois law*, i.e. the "laws of any State," to enforce any alleged "requirement or prohibition" within the Settlement Agreement related to the furnishing of information to credit bureaus. This is the type of state law claim that § 1681t(b)(1)(F) prohibits, and what the Seventh Circuit in *Purcell* confirmed is preempted by the FCRA. The *Causay* court, while recognizing that defamation and negligence claims are preempted by the FCRA, attempts to draw an arbitrary distinction between those claims and a breach of contract claim. This portion of the *Causay* opinion should not be given deference.

Accordingly, the Court should look to the holding in *Hukic, Munson,* and the other district courts that have held that a breach of contract claim based solely on the reporting of information to credit agencies is preempted by the FCRA.

> **D.** **Even if It Was Not Preempted by the Bankruptcy Code, to the Extent Plaintiffs' Breach of Contract Claim Is Based on Implied Terms of the Settlement Agreement or the Implied Covenant of Good Faith and Fair Dealing, Their Claim Is Preempted by the FCRA.**

Some district courts have concluded that, express contracts notwithstanding, the FCRA preempts breach of *implied* contract claims. *Causay*, 2016 WL 7188167, at *6. For instance, in one case, debtors alleged that a lender "breached the mortgage contract with the Plaintiffs ... by failing to abide by material and implied terms of the Note and Mortgage by failing to continue to accurately and completely transmit the mortgage history once they began reporting." *Granville*

*Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 CAR, 2014 WL 4287103, at *7 (M.D. Ga. Aug. 29, 2014). The court held that the plaintiffs' breach of contract claim was indisputably based on the bank's alleged breach of *implied* terms of the note and mortgage to continue to accurately and completely report plaintiffs' mortgage history to the credit reporting agencies, which is conduct clearly regulated by § 1681s–2. *Id.* at *8. Thus, even assuming such allegations stated a claim for breach of contract, the court was inclined to find such claim preempted by the FCRA. *Id.*

Similarly, in *Carruthers v. Am. Honda Fin. Corp.*, 717 F. Supp. 2d 1251, 1254 (N.D. Fla. 2010), the plaintiff failed to allege that a specific term of the contract was violated, and instead, alleged that the defendant violated the implied covenant of good faith and fair dealing. The court held that the duty of good faith and fair dealing is implied by law, and not voluntarily assumed, and thus a breach of contract claim based on a breach of the implied covenant of good faith and fair dealing is preempted by the FCRA. *Id.* at 1255.

Here, to the extent Plaintiffs seek to allege that BANA failed to abide by material and ***implied*** terms of the Settlement Agreement by allegedly reporting false information to the credit bureaus, their claim is preempted by the FCRA. *Granville Alley*, 2014 WL 4287103, at *7-8; *Carruthers*, 717 F. Supp. 2d at 1254-55. Furthermore, to the extent Plaintiffs seek to allege that BANA breached the implied covenant of good faith and fair dealing, their claim is likewise preempted by the FCRA. *Carruthers*, 717 F. Supp. 2d at 1254-55. Accordingly, to the extent Plaintiffs' breach of contract claim is based on the breach of any implied terms or the implied covenant of good faith and fair dealing with relation to the furnishing of information to credit agencies, the Court should dismiss Count I with prejudice.

10

**E.**     **Even if Not Preempted by the Bankruptcy Code and the FCRA, Plaintiffs'
Breach of Contract Claim Still Fails Because Plaintiffs Cannot Identify a
Provision in the Contract That Was Actually Breached by BANA.**

Plaintiffs can only state a breach of contract claim if they allege facts permitting a reasonable
inference that: (i) an enforceable contract existed between Plaintiffs and BANA; (ii) Plaintiffs
performed their obligations, (iii) BANA breached its obligations, and (iv) Plaintiffs suffered
damages as a proximate result of BANA's breach. *See Van Der Molen v. Washington Mut. Fin.,
Inc.*, 359 Ill. App. 3d 813, 823 (1st Dist. 2005). On a motion to dismiss, the meaning of the
contract "must be determined from the words or language used, and a court cannot place a
construction on the contract which is contrary to the plain and obvious meaning of the language."
*McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) (quotation
omitted). The Court may determine the meaning of an unambiguous contract as a matter of law,
and clear contract terms prevail over contrary allegations of the claim. *See id.*

In Count I, Plaintiffs allege that the "Settlement Agreement precludes BofA from certain
activities." Doc. 1 ¶ 59. Plaintiffs further allege that "[b]y making false reports based on (at best)
Plaintiffs' prior bankruptcies or pre-bankruptcy loans, BofA has violated the Settlement
Agreement." *Id.* ¶ 60. However, the Settlement Agreement does not include a single provision
referencing credit reporting, let alone BANA's obligation regarding credit reporting. Post-*Iqbal,*
a plaintiff cannot state a claim for breach of contract without alleging which provision of the
contract was breached. *Ashcroft*, 556 U.S. at 678; *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C
1819, 2013 WL 6671796, at *2 (N.D. Ill. Dec. 18, 2013) ("Without identifying a provision of the
Agreement that was actually breached, [plaintiff] cannot allege a claim for breach of contract.");
*Burke v. 401 N. Wabash Venture, LLC*, No. 08 CV 5330, 2010 WL 2330334, at *2 (N.D. Ill. June
9, 2010

To the extent Plaintiffs seek to allege that the Mutual Release provision of the Settlement Agreement was violated by BANA's alleged false reporting, the Mutual Release only purports to release "all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities…including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands…." *See* Ex. A at 2. It is clear that the Mutual Release was meant as a release of any and all past and current litigation between the parties. The alleged false reporting to credit agencies is neither a claim, counterclaim, action, defense, affirmative defense, suit, cause of action, nor any other item listed as released. The reporting of information to credit agencies involves BANA and the third-party credit agencies. Such reporting neither represents the initiation of any sort of claim or cause of action leading to litigation, nor does it represent a demand from the borrower at issue. Thus, the Mutual Release cannot be deemed breached simply as a result of the alleged false reporting described by Plaintiffs.

To the extent Plaintiffs seek to allege that the Non-Disparagement provision of the Settlement Agreement was violated by BANA's alleged false reporting, such an allegation is doomed from the outset. As an initial matter, the Non-Disparagement provision makes no reference to a prohibition on negative credit reporting. *See* Doc. __ at 4. The very last line of the Non-Disparagement provision states, "[n]othing in this Agreement shall, however, be deemed to interfere with each party's obligation to report transactions with appropriate governmental, taxing and/or registering agencies." *Id.* There can be no dispute that BANA is indeed obligated to report the status of the Loan to credit bureaus.

Furthermore, the Non-Disparagement provision is not enforceable as to BANA's right to report the status of the Loan to credit bureaus. The relevant principle is well established: a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement. *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987). If negative reporting by BANA is deemed sufficient to trigger the Non-Disparagement provision of the Settlement Agreement, then BANA is at risk of violating the Non-Disparagement provision any time Plaintiffs miss a payment or fall into default on the Loan. In such a scenario, BANA would be forced to avoid any negative reporting on the Loan simply to avoid potentially violating the Non-Disparagement provision in the Settlement Agreement. This would prevent an accurate portrayal of the Plaintiffs' true credit status, potentially allowing them to obtain financing from unsuspecting third-parties when they are actually undeserving. In this circumstance, the interest in the enforcement of the Non-Disparagement provision is outweighed by public policy harmed by its enforcement. *Town of Newton*, 480 U.S. at 392.

Accordingly, as Plaintiffs cannot identify an actual provision of the Settlement Agreement that was breached, and no provision mentions or references BANA's obligation in reporting to credit bureaus, Plaintiffs simply cannot state a claim for breach of contract. *See Nat'l Tech., Inc.*, 2013 WL 6671796, at *2; *Burke*, 2010 WL 2330334, at *2.

### F. Even if Not Preempted by the Bankruptcy Code and FCRA, Plaintiffs' Defamation Claims Based on Conduct Committed Prior to April 11, 2016 Are Time-Barred.

Plaintiffs allege that BANA began its false credit reporting "[a]t the beginning of 2016." Doc. 1 ¶ 35. Plaintiffs further allege that "Ms. Long subscribes to a credit watch service that routinely informs her of reports involving her credit, includ[ing] reporting by BofA. Ms. Long learned of BofA's false reporting through these reports." *Id.* ¶ 50. Thus, based on Plaintiffs' own

13

allegations, they would have learned of the alleged false reporting immediately from the credit watch service Long subscribes to.

The statute of limitations to file a defamation claim is one year. *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (1st Dist. 2010) (*citing* 735 ILCS 5/13–201). It has generally been held that in defamation cases the cause of action accrues and the statute of limitation begins to run on the date of publication of the defamatory material. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 131-32 (1975). The discovery rule should not be applied to defamation cases "unless the publication was hidden, inherently undiscoverable, or inherently unknowable." *Peal*, 403 Ill. App. 3d at 207.

Here, there is no dispute that Plaintiffs' defamation claims are entirely based on the alleged false credit reporting by BANA. Doc. 1 ¶¶ 35-40, 63, 71. There is no other wrongful conduct alleged to have been done by BANA. *See generally id*. Plaintiffs further admit that the alleged false reporting began "at the beginning of 2016" and they would have been immediately aware of the alleged false reporting in light of the watch service subscribed to by Long. *Id.* ¶ 50. Thus, to the extent Plaintiffs' defamation claims are based on alleged credit reporting prior to April 11, 2016—one year before the filing of the Complaint—they are time barred.

## II. THE COURT SHOULD DISMISS COUNT V (SANCTIONS FOR VIOLATION OF CONFIRMED PLANS) AND COUNT VI (SANCTIONS FOR VIOLATION OF BANKRUPTCY ORDER) FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A. Count VI Is Duplicative Of Count V.

Both Counts V and VI seek sanctions based on alleged violations of the confirmed "chapter 11 plans of reorganization effective June 13, 2013." Doc. 1 ¶¶ 87, 97. Both Counts allege that "Plaintiffs have been damaged by BofA's violation…including but not limited to actual damages, costs, and attorneys' fees" (*id*. 1 ¶¶ 94, 101), and that "BofA's actions repeat its prior misconduct

and warrant significant punitive damages." *Id*. 1 ¶¶ 95, 103. The damages sought in each of the counts are identical and based on the same violations. *Id*. 1 ¶¶ 86-103. The Seventh Circuit has held that claims that are duplicative of other claims should be dismissed. *See Kurtz v. Toepper*, No. 11 C 4738, 2012 WL 33012, at *1 (N.D. Ill. Jan. 6, 2012) (citing *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.,* 385 F.3d 737, 744 (7th Cir. 2004)). Claims are duplicative if they are based upon the same operative facts and allege the same injury. *Id*.; *see also* Fed. R. Civ. P. 12(f) (allowing a court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter").

Clearly, Plaintiffs' Counts V and VI arise out of the same operative facts, i.e., BANA's alleged violation of the confirmed Chapter 11 plans by its alleged false reporting to credit agencies. Pursuant to Plaintiffs' own allegations, the claims also allege the same injury. Doc. 1 ¶¶ 86-103. Since Count VI is based upon the same operative facts as Count V and alleges the same injury as Count V, Count VI should be dismissed with prejudice.

**B.**     **An Independent Cause of Action Is an Inappropriate Mechanism to Seek Contempt or Sanctions for the Violation of a Bankruptcy Court Order or Confirmed Plan.**

A violation of the confirmation order is an act of contempt, which, like the discharge injunction, may be remedied by the bankruptcy court's authority under 11 U.S.C. § 105(a). *In re Dendy*, 396 B.R. 171, 179 (Bankr. D.S.C. 2008). An adversary proceeding is equivalent to a stand-alone lawsuit, *Fifth Third Bank, Indiana v. Edgar Cty. Bank & Trust*, 482 F.3d 904, 905 (7th Cir. 2007), and the Seventh Circuit has held that an adversary proceeding is not the proper vehicle to present a contempt claim, as civil contempt is a method of enforcing a court order, not an independent cause of action. *In re Consol. Indus.*, 360 F.3d 712, 716 (7th Cir. 2004); *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 459 (7th Cir. 1993); *In re Mogg*, No. 05-34066, 2007 WL 2608501, at *3 (Bankr. S.D. Ill. Sept. 5, 2007) (dismissing adversary claim for contempt for

15

violation of the order of discharge because "[p]laintiffs here have therefore proceeded improperly in pursuing this matter as an adversary proceeding"). Civil contempt orders serve to compel or coerce obedience to a court order and/or to compensate parties for losses incurred because of disobedience to an order. *In re Schatz*, 122 B.R. 327, 328 (N.D. Ill. 1990). The proper vehicle to enforce a court order is a motion in the original case. *In re Consol. Indus.*, 360 F.3d at 716; *D. Patrick, Inc.,* 8 F.3d at 459.

In their Complaint, Plaintiffs make reference to their creditors, including BANA and the servicer of another loan, Everhome Mortgage Servicing ("Everhome"), all purportedly refusing to comply with the Confirmed Plans and Confirmation Order. Doc. 1 ¶¶ 27, 29. As a means to seek enforcement of and sanctions for refusing to comply with the Confirmed Plans, Plaintiffs filed the Motion to Enforce in the Bankruptcy Matter. Doc. 1-2 at 91. The Motion to Enforce was, in effect, a contempt proceeding, since the violation of the Confirmation Order is an act of contempt, which, like the discharge injunction, may be remedied by the bankruptcy court's authority under 11 U.S.C. § 105(a). *In re Dendy*, 396 B.R. at 179. Plaintiffs did not file an adversary proceeding, apparently recognizing that an independent cause of action is not the proper vehicle to present a contempt claim. *In re Consol. Indus.*, 360 F.3d at 716; *D. Patrick, Inc.,* 8 F.3d at 459.

Here, Plaintiffs have decided to disregard proper procedure, and rather than filing a motion in the original case, which is the proper vehicle to enforce a prior bankruptcy court order, *In re Consol. Indus.*, 360 F.3d at 716; *D. Patrick, Inc.,* 8 F.3d at 459, Plaintiffs filed stand-alone claims outside of the Bankruptcy Matter seeking to enforce the Confirmed Plans and impose sanctions. Doc. 1 ¶ 102 ("Courts have inherent authority to enforce court orders, including imposing sanctions."), Prayer for Relief ¶ G (asking the Court to "[i]ssue an order requiring Defendant Bank of America to immediately cease and desist from issuing false reports about Plaintiffs…"). In

16

seeking court orders that serve to compel or coerce obedience to the Confirmation Plans and to compensate parties for losses incurred because of purported disobedience to the Confirmation Order and Confirmed Plans, Plaintiffs' Counts V and VI are civil contempt actions. *In re Schatz*, 122 B.R. at 328. In proceeding against BANA through independent causes of action, particularly outside of the Bankruptcy Matter, Plaintiffs apparently and suddenly refuse to recognize that an independent cause of action, especially one outside of the original action, is not the proper vehicle to present a contempt claim. *In re Consol. Indus.*, 360 F.3d at 716; *D. Patrick, Inc.,* 8 F.3d at 459. As Plaintiffs have improperly filed independent civil contempt and sanctions actions against BANA, these actions should be dismissed with prejudice. *In re Mogg*, 2007 WL 2608501, at *3.

If Plaintiffs believe the alleged violations at issue involve the implementation of and compliance with the Confirmed Plans, Plaintiffs could have requested to reopen the Bankruptcy Matter and subsequently filed a motion for enforcement. In fact, the court in the Bankruptcy Matter has previously ruled, as part of its ruling on the Motion to Enforce, that it retained jurisdiction to enter a final order on enforcement post-confirmation. *In re Castle Home Builders, Inc.*, 520 B.R. 98, 102 (Bankr. N.D. Ill. 2014). In conducting its analysis, the court stated that to determine whether a bankruptcy court has post-confirmation jurisdiction over a dispute, "the court must first determine that 'the matter [has] a close nexus to the bankruptcy plan or proceeding ... [and] second, the plan must provide for the retention of jurisdiction over the dispute.'" *Id.* at 101 (quoting *In re Ventilex USA, Inc.,* 509 B.R. 140, 143 (Bankr. S.D. Ohio 2014)). "In determining whether a close nexus exists courts look to whether adjudication will require interpretation of the chapter 11 plan, whether it will affect the estate or the reorganized debtor and whether adjudication will interfere with the implementation of the chapter 11 plan." *Id.* (quoting *Ventilex,* 509 B.R. at 143). The court held that the relief requested within the Motion to Enforce had a close nexus to

17

the Confirmed Plans, and to resolve the Motion, the court would be required to interpret the parties' respective rights and obligations as established by the Confirmed Plans. *Id.* at 101-02. The court determined that its adjudication of the dispute would assist with the implementation of the Confirmed Plans by ensuring that payments made by the Reorganized Debtor would be properly applied to the principal balance due Everhome. *Id.* at 102. Finally, the court further indicated that the Confirmed Plans each expressly provided for the retention of jurisdiction to enforce and interpret their terms and conditions.[4] *Id.*

The same Confirmed Plans that were at issue in *Castle Home Builders, Inc.* are at issue here. Just as in *Castle Home Builders, Inc.*, Plaintiffs are seeking enforcement and implementation of the Confirmed Plans, as well as sanctions for non-compliance. Accordingly, there is little question that the court in the Bankruptcy Matter would exercise jurisdiction over the controversy to "assist with the implementation of the Confirmation Plans." *In re Castle Home Builders, Inc.*, 520 B.R. at 102. Therefore, Plaintiffs' failure to seek enforcement by filing a motion within the original action—the Bankruptcy Matter—is fatal to their bankruptcy-related claims in Counts V and VI. As a result, each of these claims should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

**C.    There Is No Private Right of Action for Sanctions Stemming from the Violation of a Confirmed Plan or Confirmation Order.**

Counts V and VI fail for the simple reason that no private right of action exists for such claims. Plaintiffs bring their claim for violation of the Confirmed Plans pursuant to 11 U.S.C. §

---

[4] Further, bankruptcy courts have the authority to enforce plan provisions, including injunctions. *In re Kimball Hill, Inc.*, 565 B.R. 878, 890 (Bankr. N.D. Ill. 2017) (*citing Thomas v. United States* (*In re 4145 Broadway Hotel Co.*), 131 F.2d 120, 122 (7th Cir. 1942) ("[T]he court has the authority to enjoin any act inconsistent with or which will interfere with the operation or execution of the plan as confirmed.")). The Supreme Court has made clear that bankruptcy courts have, as do all courts, jurisdiction to hear matters relating to their own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

AmericasActive:9233828.1

1141. However, § 1141 does not, itself, provide for a private right of action or an action for contempt, whereas § 362(h), for instance, explicitly provides for such a remedy. *See* 11 U.S.C. §§ 362(h), 1141. As previously indicated, a violation of the confirmation order is an act of contempt, which, like the discharge injunction, may be remedied by the bankruptcy court's authority under 11 U.S.C. § 105(a). *In re Dendy*, 396 B.R. 171, 179 (Bankr. D.S.C. 2008). Within its ruling on Plaintiffs' Motion to Enforce against Everhome, the Bankruptcy Court itself stated that it "is empowered by 11 U.S.C. § 105 to ensure compliance with the terms of its orders." *Castle Home Builders, Inc.*, 520 B.R. at 106.

Most courts that have addressed the issue have determined that no private remedy or private right of action is created by § 105. *In re Knox*, 237 B.R. 687, 700 (Bankr. N.D. Ill. 1999) (citing *Simmons v. Ford Motor Credit Co. (In re Simmons),* 224 B.R. 879 (Bankr. N.D. Ill. 1998) (holding that § 105 is not without limits and rejecting an independent right of action)); *In re Costa,* 172 B.R. 954, 966 (Bankr. E.D. Cal. 1994) (holding that because "before the enactment of 362(h) ... courts generally declined to imply a damages cause of action" and "Congress responded by creating a compensatory and punitive damages remedy" via § 362(h), it follows that legislation similar to 362(h) "would be necessary to create a private cause of action under § 105").

In general, with respect to private rights of action under the Bankruptcy Code, courts have long-held that the existence of a private right of action is not to be inferred haphazardly and requires affirmative evidence of Congressional intent. *In re Davis*, No. 04-80068, 2009 WL 302221, at *2 (Bankr. C.D. Ill. Feb. 5, 2009) (citing *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421 (6th Cir. 2000)). Section 105(a) is not to be construed as a catch-all private right of action for the enforcement of other Bankruptcy Code provisions. *Davis*, 2009 WL 302221, at *2 (citing *In re Dyer,* 322 F.3d 1178, 1190 (9th Cir. 2003)); *Pertuso,* 233 F.3d at 421 (provision governing

discharge injunction and reaffirmation agreements does not impliedly create private right of action for asserted violation of that provision); *In re McGregor,* 398 B.R. 561, 2008 WL 5225743 (Bankr. N.D. Miss. 2008) (no cause of action exists under the Bankruptcy Code against a creditor for filing a proof of claim that is barred by the statute of limitations). To hold that a separate and independent action exists under § 105(a) would amount to a clear act of legislation by a bankruptcy court. *In re Kmart Corp.*, No. 02 B 02474, 2006 WL 952042, at \*16 (Bankr. N.D. Ill. Apr. 11, 2006) (dismissing independent cause of action under § 105(a)).

The Seventh Circuit itself has held that the sole remedy for a violation of § 524(c), which, like §§ 105 and 1141 of the Bankruptcy Code, does not provide for a private right of action, is a contempt action under § 524(a)(2). *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001); *see also In re Joubert,* 411 F.3d 452, 455-56 (3d Cir. 2005) (sole remedy for alleged § 506(b) violation was contempt proceeding in bankruptcy court, and not private right of action under § 105(a), agreeing with "decisions holding that § 105(a) does not authorize separate lawsuits as a remedy for bankruptcy violations"); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506 (9th Cir. 2002) (violations of § 524 may not be independently remedied through § 105 absent contempt proceeding in bankruptcy court). Similarly, the remedy for a violation of § 1141, as indicated by the Bankruptcy Court in *Castle Home Builders, Inc.*, is a contempt proceeding under § 105. To hold that a separate and independent private right of action exists under § 105(a) would amount to a clear act of legislation by this Court. *Kmart Corp.*, 2006 WL 952042, at \*16. Accordingly, the Court should dismiss Plaintiffs' Counts V and VI with prejudice.

### D. Allegedly False Reporting to Credit Agencies Was Not a Violation of the Confirmation Order or Confirmed Plans.

Plaintiffs allege that BANA violated the Confirmed Plans by reporting that pre-bankruptcy loans are "delinquent," that foreclosure proceedings have been initiated pursuant to pre-bankruptcy

20

loans, that new bankruptcy proceedings have been started by Long,[5] and that payments on the Captain's View Loan have been missed and are now past due. Doc. 1 ¶¶ 93, 100. However, Plaintiffs do not identify what provision within the Confirmed Plans explicitly references or governs credit reporting. *See generally id.*

In order to hold a party in contempt, the court must be able to point to a decree from the court which "set[s] forth in specific detail an unequivocal command" which the party in contempt violated. *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986). In order to sustain a motion for civil contempt, the Court must find that the offending party must have knowingly violated a definite and specific court order. *In re Ryan*, 100 B.R. 411, 417 (Bankr. N.D. Ill. 1989).

Here, Plaintiffs fail to identify "an unequivocal command" or a "specific court order" referencing credit reporting or a requirement to report the Loan in a certain manner. Without any such "unequivocal command" or "specific court order," BANA cannot be held to have violated the Confirmation Order or Confirmed Plans. Furthermore, even if such a provision exists within the Confirmed Plans, Plaintiffs' failure to identify any such provision is fatal to their claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. A claim "***must contain sufficient factual matter … to state a claim for relief that is plausible on its face***." *Id.* (emphasis added).

Importantly, courts have held that the mere reporting to a credit bureau of the existence of a debt—even if discharged—does not violate the discharge injunction absent action taken to collect a prepetition debt. *In re Mogg*, 2007 WL 2608501, at *4; *In re Dendy*, 396 B.R. at 182 (Absent

---

[5] The Court should note that Plaintiffs do not appear to have attached a credit report that includes a comment indicating that Long has initiated a new bankruptcy proceeding. Their failure to include any such evidence in their Complaint is fatal to any claim relying on such an allegation. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. A claim "*must contain sufficient factual matter … to state a claim for relief that is plausible on its face*." *Id.* (emphasis added).

AmericasActive:9233828.1

conduct that would evidence an effort to collect a debt, coupled with a failure to amend or modify the Plaintiffs' credit report, defendant did not violate the discharge injunction.); *In re Mahoney,* 368 B.R. 579, 584-90 (Bankr. W.D. Tex. 2007); *In re Vogt,* 257 B.R. 65, 70 (Bankr. D. Colo. 2000) ("[I]t cannot be said that the Defendant's position in this regard, [i.e., post-discharge credit reporting], standing alone, was in any way 'an act' to effect collection of the debt. Nor can the Defendant be faulted, under section 524, for refusing to correct this report."); *In re Jones*, No. 09-14499-BFK, 2011 WL 5025329, at *5 (Bankr. E.D. Va. Oct. 21, 2011) ("The Courts have held that the failure to correct the *pre-discharge* reporting of a debt on the debtor's credit report, without additional evidence of some coercive efforts to collect the debt (phone calls, letters, etc.), does not rise to the level of a discharge injunction violation for which the creditor may be held in contempt."); *see also In re Goodfellow,* 298 B.R. 358 (Bankr. N.D. Iowa 2003) (finding a violation of the discharge injunction based upon adverse entries on debtor's credit report when combined with threatening letters and telephone calls from the creditor).

The same principle applied in the above cases with regard to post-discharge credit reporting can and should also be applied to post-confirmation credit reporting. Plaintiffs do not allege that BANA has taken any steps to collect on the pre-bankruptcy terms of the Loan. *See generally* Doc. 1. In fact, Plaintiffs admit that they "received loan statements from BofA for the Captain's View property that generally conformed to the terms of the Reorganization Plans and also to the Settlement Agreement." *Id.* ¶ 32. Thus, the only conduct alleged is the mere reporting to credit bureaus. Absent additional conduct that would evidence an attempt to collect on the pre-bankruptcy debt, the mere alleged false credit reporting is insufficient to rise to the level of contempt for violating the Confirmed Plans. *In re Mogg*, 2007 WL 2608501, at *4; *In re Dendy*,

396 B.R. at 182; *In re Mahoney,* 368 B.R. at 584–90; *In re Vogt,* 257 B.R. at 70; *In re Goodfellow,* 298 B.R. at 358.

Furthermore, as recognized by the court in *In re Dendy*, to the extent Plaintiffs' credit reports are purportedly inaccurate, Congress has provided a statutory framework through which they may dispute inaccurate information. *In re Dendy*, 396 B.R. at 183 (citing FCRA, 15 U.S.C. § 1681 *et seq.*). Several courts have recognized that debtors may avail themselves of the FCRA to remove discharged debt. *Id.*; *see Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 392 (C.D. Cal. 2007); *DiPrinzio v. MBNA Am. Bank, N.A.,* 2005 WL 2039175, at *4 (E.D. Pa. Aug. 24, 2005) (representation of discharged debt as due and owing is "actionable [under the FCRA] because it is misleading or materially incomplete"); *Norman v. Applied Card Sys., Inc. (In re Norman),* 2006 WL 2818814 (Bankr. N.D. Ala. Sept. 29, 2006) (citing to the FCRA and holding "[i]f a credit report indicates that a debt is past due without also disclosing that the debt has been discharged, and therefore not legally enforceable, it would appear that the debtor could correct his credit report so that his bankruptcy discharge is also disclosed").

Similarly, just as debtors may avail themselves of the FCRA to remove the reporting of discharged debt, Plaintiffs could have availed themselves of the FCRA to dispute the allegedly falsely reported status of the debt. Rather than following the process explicitly outlined by Congress under the FCRA in disputing allegedly false credit reporting, Plaintiffs chose to complain directly to BANA and its counsel. Doc. 1 at 91-96. Plaintiffs allege that their counsel went as far as to attempt to communicate with the BANA representative who executed the Settlement Agreement via social media platform Linkedin. Doc. 1 ¶¶ 37-40. It is indeed strange that Plaintiffs would expect a party who they know to be represented by counsel to respond to a message received via Linkedin from an adverse litigant threatening additional litigation. Nonetheless, when BANA

23

responded to Plaintiffs' counsel's November 1, 2016 correspondence with a request for written authorization to release confidential information (Doc. 1-2 at 98), asking that Plaintiffs' counsel submit the authorization by March 22, 2017, Plaintiffs' counsel submitted the authorization. *Id.* ¶ 48. But Plaintiffs proceeded to file this suit less than three weeks later, rather than await a response from BANA. Perhaps if Plaintiffs utilized the process created by Congress specifically to resolve disputes such as the one involved here, their purported need to file the instant litigation would have been eradicated. Regardless, given that neither the Confirmed Plans nor the Confirmation Order make reference to credit reporting requirements, and given that Plaintiffs do not allege that BANA took any additional action to collect on pre-bankruptcy debt beyond the alleged false credit reporting, Plaintiffs' claims for violation of the Confirmation Order and Confirmed Plans fail to state a claim for which relief can be granted.

### E. Punitive Damages Cannot Be Considered For Alleged Civil Contempt.

In their Complaint, Plaintiffs allege that BANA's conduct warrants "significant punitive damages." Doc. 1 ¶¶ 95, 103, Prayer for Relief ¶ D. However, the issue of punitive damages has already been addressed by the Bankruptcy Court in *Castle Home Builders, Inc.*, 520 B.R. at 108-09, where the Plaintiffs made a similar request for punitive damages against Everhome for its alleged violations of the Confirmed Plans.

The Bankruptcy Court noted that in support of their request, Plaintiffs relied principally on *Vazquez v. Sears, Roebuck & Co. (In re Vazquez),* 221 B.R. 222, 231 (Bankr. N.D. Ill.1998), which involved a suit brought by a chapter 7 debtor to enforce the discharge injunction under 11 U.S.C. § 524. *Castle Home Builders, Inc.*, 520 B.R. at 108. The Bankruptcy Court advised that § 524 of the Bankruptcy Code provides that in the case of a debtor entity, the entry of a discharge operates as an injunction against the collection or enforcement of pre-petition debts discharged upon entry of a confirmation order, and where a creditor is found to have violated the discharge injunction,

the court may impose punitive damages. *Id.* (citing 11 U.S.C. §§ 524(a) and 1141(d)(5); *Vazquez*, 221 B.R. at 230).

However, the Bankruptcy Court then clarified that a § 524 injunction is applicable only in cases where a discharge has been entered. *Castle Home Builders, Inc.*, 520 B.R. at 109. Generally, in the case of an individual chapter 11 debtor, no discharge may be entered until completion of all plan payments. *Id.* Section 1141(d)(5)(A) provides, in part, that "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." *Id.* (citing 11 U.S.C. § 1141(d)(5)(A)). Plaintiffs do not allege that they have completed all payments under the Confirmed Plans. *See generally* Doc. 1. This is because the Confirmed Plans provide that the Loan is to be re-amortized over 10 years. Doc. 1-2 at 51. As a result, there has been no discharge, and thus, no discharge injunction in effect. The Bankruptcy Court held that because the Motion to Enforce involved an individual debtor, Tammy Jo Long, the discharge injunction does not apply because no discharge has occurred. *Castle Home Builders, Inc.*, 520 B.R. at 109. For this reason, the Bankruptcy Court denied Plaintiffs' request for punitive damages against Everhome. *Id.* This Court would have no reason to stray from the Bankruptcy Court's holding with respect to punitive damages, as the same principles with respect to the individual debtor, Tammy Jo Long, apply in this matter.

Furthermore, the Court should also note that the Seventh Circuit has held that the victim of a violation of the statutory injunction might be able to obtain punitive damages, though presumably only if he could prove criminal contempt. *Cox*, 239 F.3d at 916. The same principle would presumably apply to violations of confirmation orders and/or confirmed plans. Plaintiffs do not allege criminal contempt in this matter, thus, punitive damages are unavailable. For all

25

these reasons, the Court should dismiss Plaintiffs' claim for punitive damages, with prejudice, pursuant to Rule 12(b)(6).

## III. THE COURT SHOULD DISMISS COUNT IV (DECLARATORY JUDGMENT) FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Plaintiffs' claim for declaratory judgment fails to add anything of substance, and therefore, should be dismissed in an exercise of the Court's discretion. Where a declaratory judgment claim "fails to add anything" not already raised in prior claims, the court should exercise its discretion in dismissing the declaratory judgment count. *Lansing v. Carroll*, 868 F. Supp. 2d 753, 763–64 (N.D. Ill. 2012) (dismissing a declaratory judgment claim where it "fail[ed] to add anything" not already included in the breach of contract claim); *Vulcan Golf, LLC v. Google, Inc.,* 552 F. Supp. 2d 752, 778 (N.D. Ill. 2008) (the court has discretion not to hear a declaratory judgment claim, including the discretion to dismiss a declaratory judgment claim that is duplicative of other claims). Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action "serve[s] no useful purpose" because the controversy has "ripened" and the uncertainty and anticipation of litigation are alleviated. *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002).

Furthermore, courts have held that plaintiffs' requests for declaratory judgment can be summarily dismissed where the plaintiffs have no remaining underlying claims. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 57 F. Supp. 3d 902, 918 (N.D. Ind. 2014), *aff'd sub nom. Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016) (citing *Gibbs v. Ocwen Loan Servicing, LLC,* No. 3:14–CV–1153, 2014 WL 4414809, at *9 (N.D. Tex. Sept. 5, 2014) ("[D]eclaratory judgment[s] are forms of relief based on underlying claims. Because the Court concludes that none of Plaintiff's claims can withstand dismissal at this time, Plaintiff's request for declaratory relief cannot survive and should be dismissed with prejudice.")).

26

Finally, and importantly, where a party appears to be asking for a declaration of his rights relative to the Bankruptcy Court, and the Bankruptcy Court is not a party to the litigation, a determination of the party's rights with respect to the Bankruptcy Court would be an improper use of a declaratory judgment under the Declaratory Judgment Act. *Day v. Chevron U.S.A. Inc.*, No. 1:10-CV-01320-RLY, 2011 WL 4550160, at *2 (S.D. Ind. Sept. 29, 2011).

Here, Plaintiffs' declaratory judgment count requests nothing more than a declaration that BANA's alleged false reports are in violation of the law and the Settlement Agreement. However, this request "fails to add anything" not already raised in the breach of contract and other state law claims. It is clear that the substantive suit would resolve the issues of the declaratory judgment count, and that the declaratory judgment count is simply duplicative of the other claims pleaded. In addition, given that Plaintiffs fail to plead any claim for which relief can be granted, their declaratory judgment count cannot survive, since it cannot stand alone without remaining underlying claims. Finally, in light of the Bankruptcy Court not being a party to this litigation, a determination of the party's rights with respect to the Bankruptcy Court would be an improper use of a declaratory judgment under the Declaratory Judgment Act. For all of these reasons, the Court should dismiss Count IV seeking declaratory judgment, with prejudice, for failure to state a claim for which relief can be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: June 8, 2017      Respectfully submitted,

            BANK OF AMERICA, N.A.

            */s/ David F. Pustilnik*

David F. Pustilnik
ARDC No. 6300609
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
T: (312) 558-5600
F: (312) 558-5700
dpustilnik@winston.com
*Attorney for Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I, David F. Pustilnik, hereby certify that the aforementioned document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: June 8, 2017                    /s/ David F. Pustilnik