IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMMY JO LONG, and LUXURY PROPERTIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant. | Case No. 17 CV 2756 <br><br> Judge Jorge L. Alonso |

## ORDER

For the following reasons, Defendant Bank of America, N.A.'s Motion to Dismiss [15] is granted in part and denied in part. Plaintiffs are given until December 12, 2018, to file an amended complaint consistent with this order.

## STATEMENT

Plaintiffs Tammy Jo Long and Luxury Properties, LLC, filed a six-count complaint against Bank of America, N.A. ("BANA"), alleging claims of breach of contract and defamation, as well for declaratory judgment and sanctions. BANA moved to dismiss the complaint in its entirety and Plaintiffs responded in opposition as to all claims except their defamation claims which are voluntarily dismissed. For the following reasons, BANA's motion is granted in part and denied in part.

*Background*

In 2013, the Bankruptcy Court for the Northern District of Illinois confirmed twin Chapter 11 plans of reorganization for plaintiff Tammy Jo Long and her then closely-held company Castle Home Builders, Inc. (collectively, the "Reorganized Debtors"). Defendant Bank of America, N.A. ("BANA") was a creditor in the bankruptcy proceedings and voted in favor of the plans. Among other things, the plans resulted in the mortgages of certain commercial properties of Long and Castle Home Builders being rewritten and reassigned to a new mortgagor/borrower, co-plaintiff Luxury Properties, LLC. Thereafter, Long and Luxury Properties made appropriate payments in accordance with the new mortgages.

In 2014, however, certain creditors of the Reorganized Debtors, including BANA, sought payments in accordance with the terms of the pre-bankruptcy mortgages. The Reorganized Debtors moved the Bankruptcy Court for sanctions against the creditors for their failure to comply with the terms of the reorganization plans. One creditor lost the trial of the issue, while the others

1

including BANA settled the claim. BANA's July 2014 settlement agreement with the Reorganized Debtors provided them a payment and certain other consideration, and included a mutual non-disparagement agreement. [Dkt 18.] The non-disparagement provision provides that BANA:

> [W]ill not, directly or indirectly, make any negative or disparaging statements against the Releasees maligning, ridiculing, defaming, or otherwise speaking ill of the Releasees, and their business affairs, practices or policies, standards, or reputation . . . in any form . . . that relate to this Agreement, Information . . . and the factual allegations made in the Litigation or any matter covered by the release within this Agreement. Nothing in the Agreement shall, however, be deemed to interfere with each party's obligation to report transactions with appropriate governmental, taxing and/or registering agencies.

[*Id.* ¶ 1(E).]

Following the settlement, the parties continued their relationship for more than a year without incident. Beginning in 2016, however, BANA began falsely reporting to at least one credit reporting agency that: (1) Long had filed another bankruptcy petition; (2) a Luxury Properties' loan was "delinquent"; (3) foreclosure proceedings had been initiated on certain properties held by Luxury Properties; and (4) certain loan payments had been missed and the account was past due. Plaintiffs disputed the accuracy of this information and unsuccessfully attempted to engage BANA to correct it. When their efforts were unsuccessful, this action followed.

## Standard of Review

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations of the complaint, drawing all possible inferences in plaintiff's favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## Analysis

### Breach of Contract

Plaintiffs complain that BANA violated the 2014 settlement agreement's non-disparagement provision by making false reports "based on . . . prior bankruptcies or pre-

bankruptcy loans." [Dkt 1 ¶ 60.] Plaintiffs allege BANA's false statements damaged them by causing Long's credit rating to plummet, resulting in the denial of credit applications and jeopardizing her business. BANA moves to dismiss the claim, arguing it is preempted both by the Bankruptcy Code and the Fair Credit Reporting Act ("FCRA"), and that even if not preempted, it nevertheless fails because the non-disparagement provision does not apply to credit reporting. Plaintiffs argue in opposition that neither the Bankruptcy Code nor the FCRA preempt a claim arising out of a private contract, and that because BANA's reporting was false and injurious, the exclusion provision of the non-disparagement agreement does not prevent the claim.

According to BANA, Plaintiffs' breach of contract claim is preempted by the Bankruptcy Code because it seeks to remedy what Plaintiffs acknowledge by their sanctions claims is actually a claim based on a purported violation of the Bankruptcy Code. Plaintiffs contend the 2014 settlement agreement is a private contract that is independent of the prior bankruptcy proceedings and enforceable by a non-bankruptcy court.

The Bankruptcy Code preempts "virtually all claims which allege misconduct in Bankruptcy proceedings." *Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 449-50 (N.D. Ill. 1999), aff'd, 239 F.3d 910 (7th Cir. 2001) (collecting cases). A state law cause of action is preempted if, absent the Code, there would be no cause of action. *See id.* at 450; *Twomey v. Ocwen Loan Servicing, LLC*, No. 16-CV-0918, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016) ("[T]he Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts."). Conversely, the Bankruptcy Code does not preempt a state law claim where it exists absent the Code, and can be determined without doing violence to the Code's purpose of adjudicating all competing claims to a debtor's property in one forum and one proceeding. *See Wagner v. Ocwen Federal Bank, FSB*, No. 99 C 5404, 2000 WL 1382222, at *2 (N.D. Ill. Aug. 28, 2000) (FDCPA claim not preempted by Bankruptcy Code where debt collector who did not become creditor until after conclusion of bankruptcy matter attempted to collect discharged debt).

Here, Plaintiffs seek damages for a violation of a private contract in which BANA promised not to make negative or disparaging statements about Plaintiffs or their business affairs. As in *Wagner*, Plaintiffs' claim exists without reference to the Bankruptcy Code. 2000 WL 1382222, at 2. BANA's cited authorities, on the other hand, concern state law claims that are intimately related to the Bankruptcy Code. *See, e.g., Twomey*, 2016 WL 4429895, at *1-3 (holding the Bankruptcy Code preempted state law claim concerning post-discharge collection efforts by a party to the bankruptcy proceeding); *Cox*, 242 B.R. at 450 ("[T]here would be no cause of action absent the Code."); *Holloway v. Household Automotive Finance Corp.*, 227 B.R. 501, 508 (N.D. Ill. 1998) ("[T]he Bankruptcy Code contemplates and provides for a comprehensive scheme by which to guard against fraud and remedy it.").

Similarly, both the settlement agreement and the acts of which Plaintiffs complain all post-date confirmation of the plans, and no interpretation of the prior bankruptcy proceeding is necessary to determine Plaintiffs' claim. *See Wagner*, 2000 WL 1382222, at *2. Moreover, the fact that the settlement agreement arose out of a sanctions matter in that action does not logically

differentiate Plaintiffs' claim from the breach claim of any other party to a purportedly violated contract. *See id.*

Likewise, the Court is not persuaded by BANA's assertion that Plaintiffs implicitly concede Bankruptcy Code preemption by also bringing the sanctions claims discussed below. Federal Rule of Civil Procedure 8(d) allows for alternate and inconsistent claims in pleadings.

The Court is also unpersuaded by BANA's argument that because the breach claim is based on statements to credit reporting agencies, section 1681t(b)(1)(F) of the FCRA preempts it. Instead, the Court agrees with the well-reasoned decision of its colleague in *Causay v. Wells Fargo Bank, N.A.*, No. 16-CV-7398, 2016 WL 7188167 (N.D. Ill. Dec. 12, 2016), and concludes that section 1681t(b)(1)(F)'s preemptive force does not apply to private contractual obligations.

Section 1681t(b)(1)(F) of the FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 describes the responsibilities of furnishers of information to consumer reporting agencies. It is undisputed that BANA is governed by the terms of section 1681s-2 as a furnisher of information.

As the court explained in *Causay*, for FCRA preemption to apply, "two requirements must be met: (1) the 'requirement or prohibition' – *i.e.*, the legal duty giving rise to the claim – must be 'imposed under the laws of any State' . . . ; and (2) the state law claim must be related to 'subject matter regulated under § 1681s-2'." *Causay*, 2016 WL 7188167, at *4.

In this case, the duty giving rise to Plaintiffs' claim stems from a settlement agreement, not the law of any state. By its terms then, Section 1681t(b)(1)(F) does not apply. "While state law may provide the *remedy* for breach of an express contract, the predicate *duty* is independently undertaken by the parties themselves." *Id.* at *5. The Supreme Court has recognized this important distinction in interpreting a similar preemption provision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515 (1992). Reasoning that because a manufacturer's liability for breach of warranty claim derives from the terms of the warranty, "the requirements imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor*." *Cipollone*, 505 U.S. at 525 (emphasis in original). Similarly here, although the parties' settlement agreement is enforceable under state law, its obligations are not imposed by the State. *See id.*, 505 U.S. at 526. "[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under State law* within the meaning of [the statute]." *Id.* (emphasis in original); *accord Causay*, 2016 WL 7188167, at *5. Accordingly, FCRA preemption does not apply.

Nor does BANA's contention that credit reporting activities are exempt from the non-disparagement provision defeat Plaintiffs' claim. The exception provides, "Nothing in this Agreement shall, however, be deemed to interfere with each party's obligation to report transactions with appropriate governmental, taxing and/or reporting agencies." [Dkt 18 ¶ 1(E).] Because Plaintiffs' claim is based on credit reporting, BANA says, the exception bars it. Any

4

other interpretation, it adds, would contravene the public policy surrounding consumer reporting. According to Plaintiffs, however, because their claim is based on BANA's false and injurious statements and not the mere act of reporting, it neither affects BANA's reporting obligations nor offends any public policy.

This Court agrees with Plaintiffs. Plaintiffs' claim does not interfere with BANA's obligation to provide information to credit reporting agencies. Neither the language of the exception nor the public policy fostering credit reporting insist that BANA may make the false statements Plaintiffs complain of with impunity.

Accordingly, the motion to dismiss is denied as the breach of contract claim.

*Sanctions Claims*

Plaintiffs bring two sanctions claims against BANA, one for violating the Chapter 11 plans of reorganization and one for violating the Bankruptcy Court's 2013 order that confirmed them. BANA moves to dismiss both counts, arguing at the threshold that they duplicate each other, and that in any event, a claim for sanctions is not properly brought as an independent cause of action nor is there any private cause of action for violating a confirmed plan or corresponding confirmation order. In opposition, Plaintiffs emphasize the Bankruptcy Court's waning jurisdiction following confirmation of a reorganization plan as well as its limited involvement in the determination of the plans here. According to Plaintiffs, since the Bankruptcy Court is a unit of the District Court, and the plans may be interpreted as any other contract, their claims are appropriately raised in this court.

Plaintiffs' request for sanctions is based on an alleged act of civil contempt. *See In re Pigg*, No. 05-43560, 2011 WL 3840838, at *3 (Bankr. S.D. Ill. Aug. 29, 2011) ("Civil contempt is triggered when a party violates a court order.") (citing *In re Consol. Indus.*, 360 F.3d 712, 716 (7th Cir. 2004); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir.2001)); *see also In re Dendy*, 396 B.R. 171, 179 (Bankr. D.S.C. 2008) ("A violation of the confirmation order is an act of contempt."). It is well settled in the Seventh Circuit that "there is no such thing as an independent cause of action for civil contempt." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) (internal quotation omitted); *accord In re Consol. Indus.*, 360 F.3d at 716 ("[C]ivil contempt is a method of enforcing a court order, not an independent cause of action."). Instead, "civil contempt proceedings are considered to be part of the action from which they stem." *D. Patrick, Inc.*, 8 F.3d at 459 (quotation omitted).

The Seventh Circuit has instructed that "[t]he proper vehicle to enforce a court order is a motion in the original case." *In re Consol. Indus.*, 360 F.3d at 716. Notably, a motion to enforce was the precise vehicle Long previously utilized in a post-confirmation dispute with BANA and certain other creditors. *See In re Castle Home Builders, Inc.*, 520 B.R. 98 (Bankr. N.D. Ill. 2014). Relying on 11 U.S.C. § 105(a), the Bankruptcy Court in that action readily found the authority to ensure compliance with the terms of its order. *Id.* at 100, 106; *see also Matter of Volpert*, 110 F.3d 494, 501 (7th Cir. 1997) ("[T]he plain language of § 105 furnishes the bankruptcy courts with ample authority to sanction conduct that abuses the judicial process.").

Plaintiffs contend, however, that the Bankruptcy Court may not have subject-matter jurisdiction over their request for sanctions because of its diminished authority following plan confirmation. It is well settled in the Seventh Circuit that the Bankruptcy Court's "jurisdiction includes the power to adjudicate proceedings 'arising in,' 'arising under,' or 'related to' a case under Title 11." *In re FedPak Systems, Inc.*, 80 F.3d 207, 213 (7th Cir. 1996). As Plaintiffs note, the Seventh Circuit has interpreted "related to" jurisdiction to cover that which would affect the amount of property available to creditors. *See id.* Notably, the Bankruptcy Court has previously ruled in the context of the plans at issue here that it retained jurisdiction to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation. *See In re Castle Home Builders*, 520 B.R. at 101. Accordingly, Plaintiffs' concerns do not appear well founded. In any event, the claims are dismissed here and the issue is to be decided by the Bankruptcy Court.

Plaintiffs' sanctions claim for violation of the plans of reorganization is dismissed for the additional reason that Section 1141 does not provide a private cause of action. Section 1141(a) of the Bankruptcy Code provides in relevant part: "the provisions of a confirmed plan bind . . . any creditor, whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). Section 1141(b) adds that "after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors." *Id.* § 1141(b). Unlike other provisions of the Code, Section 1141 does not expressly provide a private cause of action. *Compare* 11 U.S.C. § 1141 *with* 11 U.S.C. § 362(k) (providing "an individual injured by any willful violation" of an automatic stay the right to seek damages).

Plaintiffs do not argue Section 1141 contains an implied cause of action, and they failed to respond to BANA's argument that no such cause of action exists. Further, to the extent that Plaintiffs rely on Section 105 for an implied cause of action, courts in this district repeatedly hold it does not provide one. *See, e.g.*, *In re Knox*, 237 B.R. 687, 700 (Bankr. N.D. Ill. 1999) (applying four-part *Cort* test to determine there is no implied private right of action under § 105); *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 505 (N.D. Ill. 1998) ("Congress lacked the requisite intent necessary to imply a private right of action" in § 105.); *see also In re Kmart Corp.*, No. 02 B 02474, 2006 WL 952042, at *13-16 (Bankr. N.D. Ill. Apr. 11, 2006) (collecting appellate cases that conclude section 105 does not provide a private cause of action).

For these reasons, the sanctions claims are dismissed without prejudice.

*Declaratory Judgment*

Finally, BANA moves to dismiss Plaintiffs' declaratory judgment count as duplicative of the substantive action and failing to add any substance to the case. Specifically, Plaintiffs seek a declaration that the BANA's alleged false reports are "in violation of the law and the Settlement Agreement. [Dkt 1 ¶ 84.] According to Plaintiffs, the declaratory judgment count is distinct from the breach of contract claim because it seeks a forward-looking damage remedy, unavailable under a breach of contract claim.

A district court has "discretion to decline to hear a declaratory judgment action even if it considers the action justiciable." *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987)). "Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serve[s] no useful purpose because the controversy has ripened and the uncertainty and anticipation of litigation are alleviated." *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942 (N.D. Ill. 2002) (citing *Tempco*, 819 F.2d at 749) (internal quotation marks omitted). Courts in this district "routinely dismiss declaratory judgment claims as duplicative of substantive claims even when the relief requested may differ." *Cohn*, 130 F. Supp. 3d at 1206 (collecting cases).

Plaintiffs' argument notwithstanding, the focus of the Court's analysis "is not on the relief requested, but whether the substantive issues that must be decided by the Court are duplicative." *Id.* Because Plaintiffs' declaratory judgment count raises no issue not otherwise addressed in the substantive action, it serves no useful purpose. Accordingly, it is dismissed with prejudice.

## CONCLUSION

For all of the reasons discussed above, Defendant Bank of America, N.A.'s Motion to Dismiss [15] is granted in part and denied in part. Plaintiffs are given until December 12, 2018 to file an amended complaint consistent with this order.

Date: 11/7/2018

                                                  Jorge L. Alonso
                                                  United States District Judge